## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| LATASHA TENNIAL,<br><br>    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP and CARRINGTON MORTGAGE SERVICES, LLC,<br><br>    Defendants. | Case No. 2:16-cv-02913-JTF-cgc |

### CARRINGTON MORTGAGE SERVICES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE, OR IN THE ALTERNATIVE, TO DISMISS

COMES NOW, Carrington Mortgage Services, LLC ("Carrington"), and files this Memorandum of Law in Support of its Motion to Strike pursuant to Fed. R. Civ. P. 11(a), or in the alternative, to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), respectfully showing this Honorable Court as follows:

### STATEMENT OF FACTS

In this action, initiated by an unsigned complaint that had been pending in state court since February 24, 2016, without even so much as a summons being issued, Plaintiff Latasha Tennial ("Plaintiff" or "Tennial") is attempting to set aside a foreclosure sale based on a literal blank allegation of fraud. *See* [Doc. 1-1] at ¶ 26 (". . . Defendant is liable for the following acts of fraud: ."). Such a non-allegation clearly fails to state a claim upon which relief can be granted.

1

According to Tennial, she purchased the property located at 4573 Fawn Hollow Cove, Memphis, Tennessee (the "Property") in October 2005, and financed her purchase of the Property with a mortgage loan from Argent Mortgage Company, LLC. *Id.* at ¶ 5. This mortgage loan was refinanced on January 10, 2008, with a loan from Community Mortgage Company in the amount of $95,247.00. *Id.* at ¶ 6. This loan was secured by Tennial conveying the Property via deed of trust to Kathryn L. Harris, as Trustee for Mortgage Electronic Registration Systems, Inc., as nominee for Community Mortgage Corporation, its successors and assigns (the "Deed of Trust"). The Deed of Trust was recorded on January 10, 2008, as Instrument No. 08003385 in the Shelby County Register's Office. A true and correct copy of the Deed of Trust is attached hereto as **Exhibit "A"**.

In March 2008, shortly after obtaining the refinance loan, Tennial alleged that "the loan was sold to Countrywide Home Loans . . . [and] Countrywide immediately began to increase the monthly payments on a fixed mortgage." [Doc. 1-1] at ¶ 7. Then, three months later, in June 2008, Tennial lost her job and "got behind on her payments and tried to work with Countrywide to get modification [*sic*] but was continually refused." *Id.* at ¶ 8. Next, in two allegations that appear unconnected to anything else in the Complaint, Tennial alleged that the value of the Property "was reduced to $63,400 after the city's appraisal in 2009" and that "[b]ecause of a domestic violence situation, Plaintiff changed her address to a P.O. Box, but remained living in the Fawn Hollow Cove house." *Id.* at ¶¶ 9-10.

It is unclear what transpired between 2008 and 2011, but Tennial next alleged that "Bank of America improperly foreclosed without Plaintiff notification and put house up for sale in March 2011 [*sic*]" and that she "receives a settlement payment from Fund Independent Foreclosure Review [*sic*]." *Id.* at ¶ 12. Taking another two-year jump in time, Tennial claims that

on April 10, 2013, her mortgage loan "would be transferred to Carrington Mortgage Services, LLC effective May 01, 2013, but [Bank of America] never actually released the loan to Carrington according to the Shelby County Registry of Deeds." *Id.* at ¶ 13. After the loan was transferred to Carrington, Tennial alleged that she received a mortgage statement showing a "balance forwarded from Bank of America [of] $35,244.06, including late fees & default costs." *Id.* at ¶ 14. She further alleged that "[t]o date Bank of America has provided deficient mortgage services and foreclosure processes. They have denied all foreclosure prevention benefits entitled as well as predatory lending practices and accounting." *Id.* at ¶ 14.

The amount alleged to be the balance of $35,244.06 was likely the *delinquent* balance, since in October 2013, Tennial "received a Keep My Tennessee Home Grant in the amount of $39,844.00," which was "the amount the [unspecified] defendant claimed Plaintiff was delinquent on her FHA mortgage loan." *Id.* at ¶ 15. This amount was supposedly paid to Carrington "to take [the loan] out of default but it was never taken out of default." *Id.* at ¶¶ 15-16. Regardless of whether this payment took the loan out of default status, Tennial admitted that she failed to make payments in at least December and January 2013, when she "remained under the care of a physician" for an unspecified ailment. *Id.* at ¶ 19.

As the loan remained in default, the Deed of Trust was foreclosed on September 4, 2014, and sold to Bank of America, N.A. as the high bidder, and Bank of America assigned its bid to the Secretary of Housing and Urban Development ("HUD"). The Property was subsequently conveyed to HUD by Substitute Trustee's Deed, recorded on May 8, 2015, as Instrument No. 15043190, in the Shelby County Register's Office. A true and correct copy of the Substitute Trustee's Deed is attached hereto as **Exhibit "B"**. HUD later conveyed its interest in the Property back to Bank of America via Quit Claim Deed, recorded on July 1, 2015, as Instrument

3

No. 15063571, in the Shelby County Register's Office. A true and correct copy of the Quit Claim Deed is attached hereto as **Exhibit "C"**.

On October 27, 2014, following the foreclosure sale, "a Detainer Warrant was placed on Plaintiff's door" and an adverse judgment was eventually entered against her "even though she was under a Chapter 13 bankruptcy. Plaintiff appealed to Circuit Court and the matter was ordered back to General Sessions and is still pending." [Doc. 1-1] at ¶ 20. Tennial then set forth a number of disjointed allegations concerning post-foreclosure issues:

> 21. Carrington willingly reported false information to the IRS that Plaintiff had abandoned her property in December 2014, although they were properly informed she remained in the home.
>
> 22. Falsified documentation were submitted to the Shelby County Register of Deeds, that led to the transfer of Plaintiffs property out of her name while a pending appeal from General Sessions in Shelby County was filed in Circuit Court.
>
> 23. Several Chapter 13 Bankruptcy cases were opened by Plaintiff in an effort to get some relief and Defendants deceived the Bankruptcy Court by alleging Plaintiff was not interested in keeping her property and seeking an FED when they knew Plaintiff had filed bankruptcy.
>
> 24. In August 2015 the Plaintiff had physical damage to her roof. The damage was inspected and a partial check of $1,982.30 was made out to the Plaintiff and her mortgage company, Carrington Mortgage Services. CMS received the entire check after the Defendant endorsed the check over to the mortgage company and they placed it in a separate escrow account until the repairs were completed and the funds were to be released for payment. The repairs were completed in September. However, Carrington only released $660.77 for payment. They kept $ 1,321.53 and did not apply it to the mortgage balance nor did they take the loan out of default.
>
> 25. Carrington did not pay Plaintiffs homeowners insurance that is escrowed into the mortgage payments.

*Id.* at ¶¶ 21-25.

Following these allegations, Tennial asserts that she "is entitled to have the any [*sic*] foreclosure set aside because of the fraud of the defendant, its servants and agents. More

4

particularly and according to Tennessee Rules of Civil Procedure 9, Defendant is liable for the following acts of fraud:."[1] *Id.* at ¶ 26. She also requests "injunctive relief to prohibit the alienation of the property by the defendant" and "to prohibit the issuance of any Writ of Possession for the [Property] by any party." *Id.* at ¶ 27. Finally, she claims that she "is entitled to have the homeowner's insurance policy reinstated for the property while the issues are being litigated." *Id.* at ¶ 28.

The Complaint concludes with a signature block for two attorneys – Kelly Pearson and William Hardwick – but their signatures are not affixed. Neither has made any other appearance in the case, and it has been pending since February 24, 2016, with absolutely no prosecution whatsoever. In fact, the Plaintiff never even had summonses issued. In addition to failing to state a claim upon which relief can be granted, the Complaint should be stricken as unsigned, and this Court should find that cause exists for involuntary dismissal due to want of prosecution.

## ARGUMENT AND CITATION OF AUTHORITY

**A.  THE COMPLAINT MUST BE STRICKEN BECAUSE IT IS UNSIGNED**

Initially, this Court should address the fact that the Complaint is unsigned. This is because Fed. R. Civ. P. 11(a) leaves this Court with no choice but to "strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." *See Metro. Life Ins. Co. v. McGhee*, No. 15-2467-STA-dkv, 2016 WL 2742429, at *4 n.16 (W.D. Tenn. May 10, 2016); *Perrywatson v. United Airlines, Inc.*, No. 10 C 0639, 2011 WL 2470103, at *2 (N.D. Ill. June 20, 2011) (noting that "[t]he sanction [of striking an unsigned paper] is mandatory."). Thus, unless the Plaintiff corrects this deficiency now that it has been brought to her attention, the Complaint must be stricken and this case dismissed.

---

[1] The Complaint is blank after this point, and contains no allegations concerning "acts of fraud."

B.  **THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Even if the Plaintiff corrects the deficiency with her unsigned Complaint, the fact remains that there is absolutely no viable cause of action stated against Carrington. As such, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6).

1.  *Standard of Review*

This Court may grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) if the complaint does not state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). In considering a motion to dismiss, the Court must treat all well-plead allegations of the Complaint as true. *Id.* However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

2.  *The Plaintiff has failed to plead any facts showing that the foreclosure sale should be set aside due to fraud*

In her first request for relief, Tennial claims that she "is entitled to have the any [*sic*] foreclosure set aside because of the fraud of the defendant, its servants and agents. More particularly and according to Tennessee Rules of Civil Procedure 9, Defendant is liable for the following acts of fraud: ." [Doc. 1-1] at ¶ 26.

> The burden of proof imposed upon a party seeking rescission of a foreclosure sale is substantial, and courts do not set aside foreclosure sales lightly. *Young v. Bank One, N.A.,* No: M2003–01359–COA–R3–CV, 2004 WL 2098284 (Tenn. Ct. App., Sep. 20, 2004). If a foreclosure sale is legally held, there must be some

6

> evidence of irregularity, misconduct, fraud or unfairness on the part of the trustee or mortgagee that caused or contributed to inadequate price, before a court of equity will set aside the sale. *Holt v. Citizens Cent. Bank,* 688 S.W.2d 414, 416 (Tenn. 1984).

*Coleman v. Indymac Venture, LLC*, 966 F. Supp. 2d 759, 772 (W.D. Tenn. 2013).

Because Tennial is basing her challenge to the foreclosure sale on fraud, it is subject to the pleading requirements of Fed. R. Civ. P. 9(b).

> The purposes of Rule 9(b) are (1) to alert defendants to the particulars of the allegations against them so they can intelligently respond; (2) to prevent "fishing expeditions"; (3) to protect defendants' reputations against fraud allegations; and (4) to whittle down potentially wide-ranging discovery to only relevant matters. *Chesbrough v. VPA, P.C.,* 655 F.3d 461, 466–67 (6th Cir. 2011). Accordingly, to satisfy Rule 9(b), a plaintiff must (1) specify the time, place, and content of the alleged misrepresentation, (2) identify the fraudulent scheme and the fraudulent intent of the defendant, and (3) describe the injury resulting from the fraud. *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496, 504 (6th Cir. 2008).

*Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014).

Here, Tennial has, without a doubt, failed to plead any claim of fraud, let alone with particularity. As noted above, her Complaint is *blank* after she purports to be introducing various acts of fraud. *See* [Doc. 1-1] at ¶ 26. The other portions of the Complaint are completely silent as to fraud allegations, as well. In fact, nearly all of the allegations of wrongdoing relate to post-foreclosure sale issues. *See id.* at ¶¶ 21-25. And, most importantly, Carrington was not a party to the foreclosure, only Bank of America. Thus, Tennial has utterly failed to state a claim against to set aside the foreclosure sale due to fraud, and this claim must be dismissed.

### 3. *The Anti-Injunction Act prohibits this Court from enjoining state court eviction proceedings*

Next, Tennial asks this Court for "injunctive relief to prohibit the alienation of the property by the defendant" and "to prohibit the issuance of any Writ of Possession for the [Property] by any party." [Doc. 1-1] at ¶ 27. It is not clear if this is intended to be a separate claim, but simply seeking an injunction is not sufficient. There must be an underlying cause of

7

action, as an injunction is merely a remedy once a cause of action has been proven. *La. Crisis Assistance Center v. Marzano-Lesnevich*, 878 F. Supp. 2d 662, 669 (E.D. La. 2012) (collecting cases); *see also Shipwash v. United Airlines, Inc.*, 28 F. Supp. 3d 740, 746 n.2 (E.D. Tenn. 2014). On this basis alone, this claim must be dismissed because there is no other underlying cause of action that can support such a claim, as the claim to set aside the foreclosure sale fails as a matter of law.

Moreover, this Court cannot enjoin state court eviction proceedings, as requested by the Plaintiff. Under the Anti-Injunction Act, 28 U.S.C. § 2283, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Other district courts in this circuit, in addition to the Second and Seventh Circuits, have rightfully concluded that this statute prohibits federal courts from enjoining state court eviction proceedings following a foreclosure sale. *See Powers v. Bank of Am., N.A.*, 63 F. SUpp. 3d 747, 752 (E.D. Mich. 2014) (collecting cases). Thus, even if the Plaintiff had stated an underlying cause of action, she cannot obtain the relief she is requesting.

### 4. *The Plaintiff cannot force a reinstatement of the homeowner's insurance policy*

Lastly, Tennial has asked this Court to grant her relief "to have the homeowner's insurance policy reinstated for the property while the issues are being litigated." [Doc. 1-1] at ¶ 28. This request is, in essence, a request for a mandatory preliminary injunction. This relief is mandatory in nature because it is not a request to preserve the status quo, but to force one of the Defendants (it is not stated which one) to purchase an insurance policy for the Property, which was not in place when this action was filed. "The United States Court of Appeals for the Sixth Circuit has explained that where '[t]he relief prayed for ... is much broader than a mere

restraining order preserving the status quo' and there is 'sufficient doubt about whether appellant will ultimately prevail', granting a mandatory injunction is inadvisable." *Gaines v. Nat'l Collegiate Athletic Ass'n*, 746 F. Supp. 738, 742 (M.D. Tenn. 1990) (quoting *Dunn v. Retail Clerks Int'l Ass'n Local 1529*, 299 F.2d 873 (6th Cir. 1962)). This Court has likewise found such injunctions to be "disfavored." *White v. Stephens*, No. 13-2173-JDT/tmp, 2013 WL 3070780, at *3 (W.D. Tenn. June 17, 2013).

Here, not only is there extremely strong doubt about whether the Plaintiff will prevail, which itself necessitates denial of the request, but her request for an insurance policy is outright frivolous. She alleged that the policy was cancelled because "Carrington did not pay Plaintiff's homeowners insurance that is escrowed into the mortgage payments." [Doc. 1-1] at ¶ 25. However, Tennial was not making mortgage payments, especially *after* the foreclosure sale (which appears to be the point in time she is complaining about), so of course there would be no policy kept in place that would benefit her. And because she is still not the owner of the Property, it is unclear why Carrington would purchase any insurance policy to benefit her. If Tennial is concerned about her belongings, she would be advised to purchase her own policy that protects against loss to her personal property, but she simply has no protectable interest in the real property, and her request for a mandatory preliminary injunction must be denied.

## **CONCLUSION**

Based on the foregoing, Carrington respectfully requests that this Court grant its Motion to Strike, or in the alternative, to Dismiss.

Respectfully submitted, this 28th day of December, 2016.

*/s/ Bret J. Chaness*
BRET J. CHANESS (BPR # 31643)
**RUBIN LUBLIN TN, PLLC**
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, Georgia 30071
(678) 281-2730 (Telephone)
(404) 921-9016 (Facsimile)
bchaness@rubinlublin.com

*Attorney for Carrington Mortgage Services, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have, this 28th day of December, 2016, served all parties in this matter with the foregoing by CM/ECF and by placing a true and correct copy of same in the United States Mail, with first-class prepaid postage affixed thereto, properly addressed as follows:

Kelly Pearson
4745 Poplar, Suite 212
Memphis, TN 38117

William Hardwick
4745 Poplar, Suite 201
Memphis, TN 38117

Heather H. Wright
Benjamin W. Perry
Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
Nashville, TN 37203

*/s/ Bret J. Chaness*
BRET J. CHANESS (BPR # 31643)